UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KAMAL K. MACON II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-CV-119 |
| ) | |
| CITY OF FORT WAYNE, FORT WAYNE ) | |
| POLICE OFFICERS PHILLIP BARTROM, ) | |
| JASON ANTHONY, and BEN MCDONALD, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter is before the Court[1] on the motions *in limine* filed by the Plaintiff, Kamal Macon (Docket # 36), and the Defendants, Officers Phillip Bartrom, Jason Anthony, and Ben McDonald (collectively, "the Officers") (Docket # 29). For the reasons provided, Plaintiff's motion will be GRANTED IN PART and DENIED IN PART, and Defendant's motion will be GRANTED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Kamal Macon is suing the Defendants, Fort Wayne Police Department (FWPD) Officers Phillip Bartrom, Jason Anthony, and Ben McDonald, under 42 U.S.C. § 1983. Macon's claims arise out of the events that occurred on April 10, 2009, when the Defendants were responding to a domestic battery call from Macon's live-in girlfriend, Angela Goulding. After Officer Bartrom spoke with Ms. Goulding a block from the residence she shared with Macon, all three Officers subsequently went to this residence, where they encountered and arrested Macon.

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 14.)

Macon contends that Officers Bartrom, Anthony, and McDonald violated his Fourth Amendment rights by using excessive force on him during the course of his arrest on April 10, 2009, and for failing to intervene to stop this excessive force from being used.  He further claims that the Officers battered him in violation of state law and that their employer, the City of Fort Wayne, should be held liable for this battery.  On the other hand, the Officers maintain that Macon attempted to flee from them and resisted their efforts to arrest him, and, therefore, any force used was reasonable and necessary under the circumstances.

## II.  NATURE OF AN ORDER *IN LIMINE*

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question."  *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part) (citation omitted).  "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials."  *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change."  *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion *in limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial").  In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer."  *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion *in limine* is not a final ruling on the admissibility of the evidence that is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion *in limine* is essentially an advisory opinion, "merely speculative in effect," *id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

### III.  MACON'S MOTION *IN LIMINE*

#### A.  *Unopposed Portions of Macon's Motion* in Limine *(Nos. 4, 8-10)*

Defendants do not object to Macon's effort to preclude references or allusions to FWPD protocol or standard operating procedures; attorney's fees; settlement negotiations; or tax considerations.  As such, Plaintiff's motion is GRANTED as to these matters.

#### B.  *Narrative Reports (No. 1)*

Macon seeks to exclude any narrative reports by Officers Bartrom, Anthony, and McDonald, or any other officers who may testify, arguing that they are biased, prejudicial, and constitute inadmissible hearsay.  (Pl.'s Mot. in Limine 1-2.)  Defendants counter that the narrative reports are admissible under Federal Rule of Evidence 803(8) as public records and reports and that some of the witness statements contained in these reports may fall under the excited utterance exception to the hearsay rule.  (Defs.' Resp. to Pl.'s Mot. in Limine ("Defs.' Resp.") 2-3.)  Defendants further argue that the narrative reports may be used to refresh an officer's recollection under Rule 803(5).  (Defs.' Resp. 3.)

At this juncture, Macon's motion *in limine* is GRANTED with respect to this evidence.  Presumably, any narrative reports may ultimately be admissible, at least in part, under Federal Rule of Evidence 803(8), although certain hearsay statements within the reports may need to be redacted.  Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained.  Counsel

are directed to confer in an effort to reach a stipulation concerning suitable redactions.  Moreover, until Defendants have laid a proper foundation, they may not use the document to refresh their recollection or read the document into evidence under Rule 803(5).

### *C.  The Criminal Charges Brought Against Macon (No. 2)*

Next, Macon attempts to preclude evidence about whether criminal charges were brought against him as a result of his arrest on April 10, 2009, on the basis that, because this is an excessive force case, the jury does not need to hear that Defendants arrested or charged him with a particular criminal offense.  (Pl.'s Mot. in Limine 2.)  Macon further argues that the charge brought against him—domestic battery—is inherently inflammatory and prejudicial and that allowing the jury to hear about the charge would suggest that he was in fact guilty when, actually, the charge was ultimately dismissed.  (Pl.'s Mot. in Limine 2.)  In response, Defendants maintain that the jury is entitled to know the nature of the offense for which Macon was arrested because the charge is relevant to the jury's assessment of the reasonableness of the Officers' conduct.  (Defs.' Resp. 5-6.)

The Court agrees with Macon that the charges brought against him should not be admitted.  Macon is not making a false arrest or malicious prosecution claim.  The only issue in dispute is whether, in light of the facts and circumstances known to them at the time, the Officers' use of force against Macon was objectively reasonable.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007).  Whether or not Macon was later charged with a crime is irrelevant to whether the amount of force the Officers used in arresting him was excessive.  Furthermore, significant prejudice or confusion could arise if the jury seeks to retroactively gauge the reasonableness of the Officers' use of force against the knowledge that criminal charges were later lodged by the prosecuting attorney.  *See* FED. R. EVID.

403.

Nonetheless, the Officers will be permitted to testify about why they arrested Macon, as that would be relevant to the reasonableness of the force used. FED. R. EVID. 402; *Payton v. Fike*, No. 1:09-cv-222, 2010 WL 4065601, at *3 (N.D. Ind. Oct. 15, 2010); *Larsen v. Barrientes*, No. 1:09-cv-55, 2010 WL 2772325, at *2 (N.D. Ind. July 12, 2010); *Starks-Harris v. Taylor*, No. 1:08-cv-176, 2009 WL 2970382, at *3 (N.D. Ind. Sept. 11, 2009). While Macon argues that domestic battery is inherently inflammatory and prejudicial, "[t]o the extent that the officers were told that there was a 'domestic disturbance in progress' . . . such information is highly probative at least as to their states of mind . . . ." *Ellis v. Country Club Hills*, No. 06 C 1895, 2011 WL 6001148, at *5 (N.D. Ill. Dec. 1, 2011). Importantly, "[p]olice officers arrive at the scene of a reported 'domestic disturbance' with a different mindset than officers who are responding to a call about a cat stuck in a tree, and the jury is entitled to understand the circumstances that were known to the officers at the relevant time periods." *Id.* Any prejudice from allowing the jury to hear that Defendants were called to the scene because of a domestic disturbance fails to substantially outweigh the probative value of that evidence to the jury's determination of whether the force Defendants used was reasonable. *See* FED. R. EVID. 403. Accordingly, Macon's motion is GRANTED IN PART and DENIED IN PART with respect to this evidence.

### D. Macon's Criminal Record (No. 3)

Macon also attempts to preclude evidence regarding his criminal record or information as to other alleged prior bad acts, arguing that they are inadmissible character evidence under Federal Rule of Evidence 404(b). (Pl.'s Mot. in Limine 2.) Defendants respond that Macon's 2006 federal conviction for possession of a stolen firearm and criminal forfeiture is admissible for impeachment purposes under Federal Rule of Evidence 609. (Defs.' Resp. 7-11.)

Rule 609(a)(1) provides that evidence of a witness's criminal conviction is admissible, subject to Rule 403, "if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . . ." FED. R. EVID. 609(a)(1).  Convictions are not admissible, however, "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."  FED. R. EVID. 609(b).  The Seventh Circuit has "defined both the starting and ending points for the calculation of Rule 609(b)'s ten-year time limit.  The clock starts at the witness's release from any physical confinement, or in the absence of confinement, the date of the conviction." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) (citation omitted).  "[T]he end date of the time limit for impeaching convictions is the start of the trial at which the witness is testifying." *Id.* (citation omitted).

Here, there is no dispute that Macon's federal conviction for possession of a stolen firearm was punishable by more than one year imprisonment.  (Defs.' Resp. 7); *see* 18 U.S.C. § 924(a)(2) (authorizing imprisonment of "not more than 10 years" for any person who violates 18 U.S.C. § 922(j), the statute criminalizing possession of a stolen firearm).  Therefore, since this conviction also falls within the ten year period before the start of the trial on September 4, 2012, it is admissible for the limited purpose of impeachment.[2]  Accordingly, Macon's motion *in limine* is

---

[2] Macon makes no argument as to why the probative value of this conviction for purposes of impeachment is outweighed by any prejudicial effect, *see* FED. R. EVID. 609(a), 403, and the Court can see none.  After all, Macon's credibility is central to the case.  *Pinkney v. Thomas*, No. 1:07-cv-186, 2008 WL 4514830, at *2 n.4 (N.D. Ind. Oct. 7, 2008); *see United States v. Smith*, 131 F.3d 685, 687 (7th Cir. 1997).  However, to minimize the risk of undue prejudice, Defendants are limited to submitting into evidence solely the date, charge, and disposition of the conviction.  *Pinkney*, 2008 WL 4514830, at *2 n.4; *see, e.g.*, *Charles v. Cotter*, 867 F. Supp. 648, 656 (N.D. Ill. 1994) (concluding that the witness's felony convictions were probative evidence of his credibility and that any prejudicial effect was reduced by limiting the cross-examination "to the crime charged, the date, and the disposition

DENIED as to his 2006 conviction for possession of a stolen firearm.

*E. Any Allegations that Macon Had Been in Prior Physical Altercations or Fights (No. 5)*

Macon further seeks to prevent Defendants from introducing allegations of prior bad acts on the grounds that this would constitute impermissible character evidence under Federal Rule of Evidence 404(b)—as he believes they would be used to show he acted violently toward the Defendants or otherwise was resisting arrest when they subjected him to force—and would be highly prejudicial and inflammatory. (Pl.'s Mot. in Limine 3.) On the other hand, Defendants maintain that if Macon argues that the alleged force used during his arrest caused him great emotional distress such that he sought treatment with Pastor Gregory, then they should be permitted to question Macon about his volatile relationship with his first wife and the counseling he sought at the Bowen Center as a result of the domestic violence that occurred between them. (Defs.' Resp. 11.)

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." FED. R. EVID. 403. Here, the risk of prejudice substantially outweighs the probative value of evidence pertaining to Macon's prior relationship with his first wife and the counseling he received as a result of the domestic violence that occurred between them. Indeed, the probative value of this evidence is tenuous, especially at this juncture when the Court cannot say with certainty what Macon will argue at trial. And, although the Officers will be permitted to testify about the domestic violence that allegedly occurred on the night of Macon's arrest, as "the jury should be given an unvarnished view of the circumstances on the ground at the pivotal moments of the case, the Court is mindful of the possibility of undue prejudice to [Macon] if the

---

(*i.e.*, guilty or not guilty—not length of sentence) with respect to felony convictions during the past ten years").

presentation of evidence on the allegations of domestic violence reach the point of overkill." *Ellis*, 2011 WL 6001148, at *5. Accordingly, at this stage, Macon's motion is GRANTED with respect to this evidence of prior physical altercations and fights.

### F. Domestic Violence Affidavit of Probable Cause (No. 6)

Macon also moves to exclude the Domestic Violence Affidavit of Probable Cause prepared in connection with the events on April 10, 2009, which he contends is unduly prejudicial, inflammatory, and likely to confuse the jury, because Defendants did not view it before they arrested Macon. (Pl.'s Mot. in Limine 3.) Defendants maintain, however, that Officer Bartrom prepared this affidavit, which details what he knew about the alleged domestic violence, after speaking with Ms. Goulding, the alleged victim, but before Defendants made contact with Macon at his residence and arrested him and that, consequently, it speaks to the information available to the Officers prior to arresting Macon. (Defs.' Resp. 12.)

In an excessive force case, the circumstances that matter in a jury's determination of whether an officer's actions were objectively reasonable are "only those circumstances known and information available to the officer at the time of his action." *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988) (en banc). This requires a jury to "stand in the shoes of the officer and judge the reasonableness of his actions based on the information he possessed in responding to that situation." *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011) (citing *Sherrod*, 856 F.2d at 804-05).

Here, the Officers were dispatched on a domestic violence call, and, if Defendants are correct, Officer Bartrom prepared the probable cause affidavit after speaking to Ms. Goulding, but before he and the other officers encountered and arrested Macon. As such, this affidavit shows the knowledge that at least Officer Bartrom possessed—if not the other officers—when

8

responding to the situation. Therefore, this information is relevant to whether the Officers' actions were objectively reasonable because it was information possessed and available to at least one—if not all—of them at the time of Macon's arrest. *See Common*, 661 F.3d at 943; *Sherrod*, 856 F.2d at 804. Moreover, the probative value of this evidence to the excessive force inquiry is not substantially outweighed by the danger of unfair prejudice to Macon. *See* FED. R. EVID. 403. Therefore, Macon's motion is DENIED as to this evidence.

### G. Macon's Booking Photo from April 10, 2009 (No. 7)

Macon next seeks to exclude his booking photo from April 10, 2009, as unduly prejudicial since it "necessarily carries with it the appearance of guilt." (Pl.'s Mot. in Limine 3.) Defendants counter that this photo depicts Macon's appearance after the arrest and should be presented to the jury for consideration regarding any injuries Macon allegedly sustained during his arrest. (Defs.' Resp. 12.) Because Macon contends that during his arrest he was thrown to the ground and that Officer Bartrom put his knee or foot on his head while he was on the ground and, once he was handcuffed, slammed him into the security door of the house (Docket # 40 at 2), Macon could have sustained some injury to his face, making his booking photo relevant to his excessive force claim. *Cf. Moore v. City of Chicago*, No. 02 C 5130, 2008 WL 4549137, at *3 (N.D. Ill. Apr. 15, 2008) (excluding a plaintiff's booking photo as irrelevant when it did not show the portion of her body she claimed was injured).

And, as Defendants will be permitted to testify as to why they arrested Macon—and therefore, *that* they arrested Macon—but not that Macon was later charged, the booking photo, taken after his arrest, does not carry any more "appearance of guilt" than the fact of Macon's arrest itself does. Accordingly, the booking photo's probative value is not substantially outweighed by any prejudicial effect, *see* FED. R. EVID. 403, and Macon's motion is DENIED

with respect to this photo.

> *H. Statements by Witnesses that Macon "Beat" Anyone Prior to His Arrest or that Before the Date of His Arrest, He "Beat" or "Physically Abused" Anyone (No. 11)*

Macon then seeks to prevent Defendants from introducing statements that prior to April 10, 2009, he had "beaten" or "physically abused" anyone, as such statements would be highly inflammatory and prejudicial. (Pl.'s Mot. in Limine 4-5.) Defendants represent that they do not intend to introduce such evidence, but maintain that they should be permitted to testify as to the information Ms. Goulding provided to them about the alleged domestic abuse on April 10, 2009, as this information was available to them at the time they encountered Macon. (Defs.' Resp. 12-13.)

Since Defendants do not intend to introduce any statements that Macon beat or physically abused anyone before April 10, 2009, Macon's motion is GRANTED with respect to this evidence. With regard to any information Ms. Goulding provided to the Officers about the alleged domestic violence that took place on April 10, 2009, before the Officers encountered Macon, as the Court already explained above, such information is relevant to whether the Officers' actions were objectively reasonable. *See Common*, 661 F.3d at 943; *Sherrod*, 856 F.2d at 804. Accordingly, Macon's motion to exclude this particular evidence—what Ms. Goulding reported to the Officers regarding the alleged domestic abuse on April 10, 2009, before they arrested Macon—is DENIED.

> *I. Any Reference to, or Argument, that the Jury Should Not Award "Wife Beaters" or "Woman Beaters" (No. 12)*

Lastly, Macon moves to preclude Defendants from suggesting to the jury that using excessive force against a person accused of domestic battery is permissible or should be overlooked because of the nature of the crime. (Pl.'s Mot. in Limine 5.) In response, Defendants

state that they have no intention of making such an argument and will only introduce to the jury that the Officers were dispatched on a domestic battery call and the information received from Ms. Goulding—that she had been a victim of domestic battery. (Defs.' Resp. 13.) Therefore, Macon's motion is GRANTED with respect to this evidence.

### IV.  DEFENDANTS' MOTION *IN LIMINE*

#### A.  *Unopposed Portions of Defendants' Motion* In Limine *(Nos. 1-3, 6-7)*

Macon does not object to Defendants' effort to preclude references or allusions to any prior or subsequent incidents involving accusations of excessive force against Defendants or other members of the FWPD; the disciplinary records of Defendants or other members of the FWPD; other excessive force incidents, claims, or lawsuits; attorney's fees; or any settlement negotiations engaged in by the parties. As such, Defendants' motion is GRANTED as to these matters.

#### B.  *Medical Opinions Unless the Physician Who Generated the Reports Is Called to Testify (No. 4)*

Defendants seek to preclude Macon from introducing into evidence any medical opinions, including, but not limited to, diagnosis, recommended course of treatment, or prognosis, unless the physician who generated the medical record is called as a witness at trial. (Defs.' Mem. in Supp. of Mot. in Limine 6-10.) Macon objects to the extent that this motion is directed at treating physicians who gained their opinions and conclusions about his physical condition, diagnosis, prognosis, and course of treatment while treating him. (Pl.'s Resp. to Defs.' Mot. in Limine 1.) In reply, Defendants contend that Macon's argument is irrelevant as Macon has not listed any medical provider as a witness; nonetheless, they argue that a physician who treated Macon immediately following his arrest could to testify about Macon's medical condition and treatment, but that any treatment that Macon received a significant amount of time *after* his arrest would

require expert testimony causally linking Macon's injuries to Defendants' actions.  (Defs.' Reply 1-2.)

In his Pretrial Disclosures, Macon does not list a single medical provider among his possible witnesses; as such, Macon's argument regarding treating physicians does appear to be irrelevant.  Therefore, to the extent that Defendants seek to exclude medical records and any medical opinions contained in them, as Macon apparently does not intend to call any physicians to testify at trial, Defendants' motion is GRANTED as to these matters.

### C. Evidence Regarding Causation of Macon's Physical Injuries or Mental Illness Allegedly Resulting from the Incident (No. 5)

Defendants seek to prevent any lay testimony from Macon or others—including Pastor Gregory—that "his arrest proximately caused any medical, psychological, or psychiatric condition because such matters require expert medical testimony."  (Defs.' Mem. in Supp. of Mot. in Limine 12.)  Such matters of causation do necessitate expert testimony.  *See, e.g.*, *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010).  In this case, however, that avenue is closed because Macon never disclosed any expert witnesses, including any treating physicians, under Federal Rule of Civil Procedure 26(a)(2), and the time to do so has now passed.  *Brown v. City of Fort Wayne*, No. 1:09-cv-150, 2011 WL 2690470, at *4 (N.D. Ind. July 11, 2011); *see* FED. R. CIV. P. 26(a)(2)(D); *see generally Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004) (citing *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) (noting that treating physicians are not exempt from the requirements of Federal Rules of Evidence 702 and 703 because "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation")).  Defendants further argue that, under Federal Rules of Evidence 403, 701, and 702, testimony from Macon or

any other lay witness about the causation of Macon's alleged physical injury or mental illness is beyond his, or their, knowledge and qualifications. (Defs.' Mem. in Supp. of Mot. in Limine 14.) Nevertheless, they concede that Macon may discuss "the symptoms he experienced at the time of the arrest." (Defs.' Mem. in Supp. of Mot. in Limine 14.)

Defendants correctly delineate the bounds of permissible testimony and evidence concerning causation. Indeed, under Federal Rule of Evidence 701, a lay witness may offer opinion testimony to the extent that it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Therefore, a lay witness is entitled to testify about his "own perceptions, including the physical and emotional effects of the defendants' alleged conduct." *Christmas*, 691 F. Supp. 2d at 821. He "cannot, however, offer medical opinions that require scientific, technical, or other specialized knowledge," "give any complex medical diagnoses or opine on any long term medical conditions." *Id.* (citation and internal quotation marks omitted).

Consequently, Macon may testify about his own perception of his physical and mental health, before and after the incident. This includes recounting any pain, fear, or anxiety he experienced during those times. *See Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (allowing plaintiff to describe pain resulting from attack where there is "no . . . complicated question of medical causation"); *United States v. Cravens,* 275 F.3d 637, 640 (7th Cir. 2001) (allowing lay opinion testimony to establish existence of drug or alcohol problem); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196-98 (3d Cir. 1995) (recognizing lay testimony as to health as "quintessential Rule 701 opinion testimony"); *Holleman v. Duckworth*, 700 F.2d 391, 395 (7th Cir. 1983) (permitting plaintiff's testimony as to his own medical

symptoms). Similarly, Pastor Gregory can testify as to his observations regarding Macon's alleged emotional distress and his efforts to counsel Macon. *See Frazier v. Ind. Dep't of Labor*, No. IP 01-198-C-T/K, 2003 WL 21254567, at *2 (S.D. Ind. Mar. 24, 2003) (stating that "the Plaintiff's lay witnesses may testify about their firsthand observations of his emotional distress and mental anguish and any physical manifestations attributed to such distress and anguish").

No witness, however, shall be permitted to opine that the arrest proximately caused Macon's mental and physical health problems or offer a medical diagnosis of his alleged injuries. *Cravens*, 275 F.3d at 640 ("Although a lay person may readily observe a [health] problem, the *causation* of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision." (emphasis in original)); *Frazier*, 2003 WL 21254567, at *3 ("[G]enerally, a lay opinion, whether from the Plaintiff himself or from his other non-expert witnesses about the cause of emotional distress or mental anguish . . . will not be admissible); *see also Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (holding that lay testimony is not sufficient to establish plaintiff's claim that secondhand smoke caused his symptoms). Macon can only lay the groundwork for the jury to infer causation by his own testimony, and testimony from his other lay witnesses like Pastor Gregory, about his present health conditions and whether they appeared prior to the incident. *Hendrickson*, 589 F.3d at 892-93 (plaintiff may describe the altercation and any ensuing pain or suffering he experienced at that time); *Frazier*, 2003 WL 21254567, at *3 (noting that non-expert testimony which allows an inference to be drawn that Plaintiff's emotional distress and mental anguish was caused by the disputed incident is admissible). Accordingly, the Defendants' motion with respect to evidence or testimony addressing the causation of Macon's alleged injuries is GRANTED.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion *in limine* (Docket # 36) is GRANTED IN PART and DENIED IN PART, and Defendants' motion *in limine* (Docket # 29) is GRANTED as set forth herein.  It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury.  Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for the 28th day of August, 2012.

S/Roger B. Cosbey                    
Roger B. Cosbey,
United States Magistrate Judge